HUDSON COUNTY CALEDONIAN BUILDING AND LOAN ASSO-
CIATION, respondent,

*v.*

SAMUEL COLE, substituted administrator, &c., et al.,
appellants.

[Argued May 27th, 1940.   Decided October 10th, 1940.]

*Mr. Mortimer Neuman,* for the appellants.

*Mr. John H. Jobes,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

The bill was filed by a mortgagee, and prayed subrogation
to the lien of a former mortgage and the final decree on fore-
closure thereof, which had been satisfied with the proceeds
of complainant's loan.   The Court of Chancery decreed as
prayed in the bill and the appeal is from that decree.

A short statement of the history of the case is required.

Catharine Worthley, owner of certain real estate, entered
into a contract to exchange this real estate for other real
estate, which was subject to a mortgage for $2,000.   Before

the deeds were exchanged, she died intestate, and a member of the bar, who will be called "X," was appointed administrator of the estate. Becoming aware of the existence of this contract, he very properly applied to the Orphans Court pursuant, no doubt, to section 154 of the Orphans Court act (*Comp. Stat. pp. 3870* and *3871*) now *R. S. 3:23-3*, and section 155, *R. S. 3:23-4* and *5*, "for the fulfillment of the contract or agreement." The Orphans Court made an order accordingly, the piece of real estate of which the intestate died seized was exchanged for the other piece of real estate that was subject to the mortgage, and "X," as administrator, received a deed for the latter piece of real estate subject as aforesaid. The estate of decedent had not sufficient funds to pay off this mortgage of $2,000 and, consequently, in 1934 the owner of the mortgage filed a bill to foreclose it. There was a final decree for the principal of the mortgage with interest and costs and also for taxes paid by the mortgagee, and a *fieri facias* issued from the Court of Chancery directed to the sheriff commanding him to sell the property. The administrator was thus faced with the probable loss of the property and cast about for a way to save it. As it happened, he was at the time the official solicitor of the respondent building and loan association and conceived the idea of arranging to have the association make a loan on the property of a sufficient amount to take up the existing mortgage and decree. At this point, instead of going frankly to the building and loan association and stating the facts, Mr. "X" resorted to a subterfuge, which would seem to have been both unwise and unethical. What he did was to make a deed, as administrator, to his own office secretary reciting a consideration of $6,000, although no consideration actually passed, and reciting that the property was subject to the $2,000 mortgage. The secretary then made an application to the complainant association for a loan of $3,000 on the property, the application was granted, the title was certified by Mr. "X," a new mortgage to the building and loan association was executed and recorded and the proceeds used to take up the outstanding decree and execution. At this point it seems perfectly clear that the complainant build-

ing and loan association, by virtue of the premises, was entitled to be subrogated to the foreclosed mortgage and decree thereon by way of lien on the property. A cautious conveyancer might probably have arranged to take an assignment of both the mortgage and decree as muniments of title; but this was not done. What Mr. "X" did was to have the underlying mortgage canceled of record and the Chancery execution returned into court as satisfied. Thereafter the heirs of the intestate, having ascertained the facts, set up a claim that the mortgage to the building and loan was invalid because conceived and executed in fraud and that they were entitled to have the real estate free of encumbrance.

The bill in this case was filed by the building and loan association praying subrogation, foreclosure and sale as against the heirs and others interested; and the fundamental question before the Court of Chancery for decision was whether the complainant is entitled to that subrogation. The bill itself is substantially a bill to foreclose down to the prayer, which is (1) for answer, (2) an account of the amount due on the complainant's mortgage, (3) the imposition of a lien on the property for the amounts advanced, (4) a decree for the estoppel of the heirs and others to claim any interest superior to the complainant's mortgage, (5) that the complainant's claim be paid, and (6) in default of payment, sale of the property to satisfy that claim.

The case exhibits the situation of a perfectly innocent building and loan association being deceived by its own solicitor, who, as the vice-chancellor said in his unreported decision, was really acting for and in the interest of the heirs of the decedent, and who, as to them, seems to have been honest enough; but might well have been charged with fraud on respondent in the bill, to which he was made a party.

The learned vice-chancellor reserved his opinion from publication in the reports, but we take the liberty of quoting the latter part of it which precisely coincides with our view of the case, with some minor alterations which are wholly immaterial to the substance of the decision.

"Complainant's loan was really sought by 'X' administrator for the benefit of the heirs whom he represented. 'X'

used his secretary as his dummy in procuring the loan from complainant, and since he was acting in behalf of said heirs, his knowledge of facts which he failed to disclose to complainant cannot be imputed to and bind complainant merely because complainant dealt with him as its attorney for the purpose of making a title search and closing the loan. His true position was adverse to complainant; for he was actually acting for the preservation and protection of the interests of the heirs who were in immediate danger of losing their property through sale under the foreclosure of the existing mortgage. The heirs have suffered no loss or damage through complainant's loan; because the entire amount of the loan was used for their benefit and it did not increase the liens to which the property was then subject or the expense that had to be incurred to place the property in repair.

"If complainant's mortgage cannot be considered a valid lien on the mortgaged premises, the complainant still should not be regarded as a volunteer who has discharged obligations against defendant's property without color of authority or right. It was led into paying out its money for the aforesaid purposes in the mistaken belief that its mortgage was valid and under the circumstances it is entitled to an equitable subrogation for the whole amount of its loan to the extent of the balance now due thereon and to a lien on the mortgaged premises for such balance, to be satisfied by a sale of the premises under decree of this court. *Homeopathic Mutual Life Insurance Co.* v. *Marshall, 32 N. J. Eq. 103; Swedesboro Loan and Building Association* v. *Gans, 65 N. J. Eq. 132; Jackson Trust Co.* v. *Gilkinson, 105 N. J. Eq. 116; Home Owners' Loan Co.* v. *Collins, 120 N. J. Eq. 266; Cliffside Park, &c., Co.* v. *Progressive, &c., Co., 122 N. J. Eq. 109.*"

The decree under review is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 13.

*For reversal*—None.