ANNA STEFFEL and JOHN STEFFEL, her husband, complainants-appellants,

v.

ANDREW GRISSLER et al., defendants-respondents.

[Submitted February 14th, 1941. Decided April 25th, 1941.]

426

*Mr. Russell Fleming,* for the appellants.

*Mr. Edmund A. Hayes* and *Mr. Morris Spritzer,* for the respondents.

The opinion of the court was delivered by

PARKER, J.

The general legal and equitable situation was that of a bill by mortgagors against mortgagee in possession, to redeem, and for accounting of rents and profits; and answer incidentally stating that account, and setting up a decree in a suit to quiet title, that complainants herein had "no further interest in said premises" followed by an action of ejectment, judgment therein in favor, of the respondent mortgagee, and eviction of the present appellants. The Vice-Chancellor ruled that the decree last mentioned, and the judgment in ejectment, both over six years old and unchallenged in the interim. were conclusive in the present suit, and dismissed the bill, filing an unreported memorandum of decision. We are clear that the decree should be affirmed. But the history of the case presents unusual features, and some short account of them seems advisable. We gather that the complainant Anna Steffel was in 1932 the owner of certain realty in Middlesex county (the description is not printed) subject to a building and loan mortgage of $7,000, to a second mortgage of $1,500, and to two years' taxes: and that foreclosure of the second mortgage had been begun. They owed defendant, or at that time he loaned them, a further sum of $1,000. In that situation they executed to defendant a deed of the property, absolute in form, but containing a recital that it was subject to an "option agreement" of even date and to be recorded with the deed. The option agreement was so recorded, and a copy thereof is annexed to the bill. It provides for a reconveyance to Anna Steffel or her nominee under certain monetary conditions, in general the repayment of advances made and to be made by respondent less rents collected. The option was to be

exercised on or before July 14th, 1933 : and if not so exercised, respondent should pay Anna Steffel $542.95 in full settlement of all claim to the premises. The answer stated an account of income and expenses, and averred that the $542.95 had been paid out for the use of complainants.

Of course it is perfectly clear that the two instruments amounted to a mortgage. The case shows plainly enough that there was a default in payment, in consequence whereof respondent acquired the usual rights of a mortgagee to foreclose, to enter into possession and collect rents, and to bring ejectment if possession were refused. What he did was to file a bill in Chancery, of which no copy is before us, but respondent's answer in the present suit states that the bill "had for its purpose the declaration that said deed so made by the complainants to the defendant was absolute and that the complainants had no further interest in said premises." The answer further states that final decree was entered in that suit in favor of the respondent. The file of the case (not printed in the book before us), shows that the bill was a bill to quiet title under the statute (*N. J. S. A. 2:76-2, et seq.*) that there was a decree *pro confesso* and final decree in ordinary course. Just how this suit came to be brought, and decree entered, in the face of the fact stated in the very next paragraph of the answer in the present cause, that the Steffels continued to remain in the premises and refused to pay rent, and that respondent had ·to bring ejectment and obtain judgment therein, to get them out, is by no means clear; but the decree in the Chancery suit stands unchallenged. And whatever may be said as to its technical regularity, we think that the action embodied all the essentials of an old-fashioned strict foreclosure. That remedy is customary to-day in cases where there has been an omission of a party such as a subsequent encumbrancer or judgment creditor: and until the Act of 1820, *P. L. 99; R. S. of 1821 pp. 703, 705, § 8,* it was probably the ordinary means of foreclosing the right of redemption set up in the Act of 1794, *Pat. 144; R. S. of 1821 p. 161.* That act remains to this day (*Comp. Stat. p. 3408-9*), "saved from repeal," *N. J. S. A. 2:65-9, 10, 11,* and the interesting and instructing preamble to the Act of 1794, carried through all

the subsequent statutory compilations including *Comp. Stat. of 1910,* is particularly apposite in this case. The Act of 1820, *supra,* section 8, provided for sale in the foreclosure suit, and that is now the usual practice. In *Shields* v. *Lozear, 34 N. J. Law 496,* an ejectment suit, the subject is discussed at pages 502-503. The gist of the strict foreclosure was, and is, under modern practice, a decree that the mortgagor pay by a time certain, or lose his equity of redemption. There is no sale, but the equity of redemption is forfeited, and possession recovered by action at law if necessary. *Pom. Eq. Jur. (Ed. 1886)* § *1187.* We conclude, therefore, that apart from the practice settled in the Court of Chancery, that an attack on the former decree must be by petition in the same suit, the decree in that suit was properly entered and operated as a foreclosure of all equity of redemption. The decree under review will be affirmed.

It is claimed for appellants that a hearing was denied, and that testimony should have been taken. But the determinative facts were matters of record. There could be no question about the "deed" and option agreement, or the Chancery suit and the ejectment. As the Vice-Chancellor properly held, these were not subject to collateral attack.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, THOMPSON, JJ. 15.

*For reversal*—None.