FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF CLEARWATER, FLORIDA, PLAINTIFF, (AMERICAN TITLE INSURANCE COMPANY, A FLORIDA CORPORATION, SUBSTITUTED PLAINTIFF) v. GEORGE W. FINK, JEANETTE V. FINK, HIS WIFE, VITO DORIA, ROSE DORIA, HIS WIFE, VITO CAPABIANCO, JULIA CAPABIANCO, HIS WIFE, JOHN L. BORK, JOSEPHINE M. BORK, HIS WIFE, UNITED STATES OF AMERICA, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided January 11, 1968.

*Mr. Frank W. Hoak* for substituted plaintiff (*Mr. Donald B. Jones,* attorney).

*Mr. Morton Joel Goldfein* for defendants Vito Capabianco and Julia Capabianco (*Mr. Donald I. Bierman,* attorney).

LANE, J. S. C.  The amended complaint seeks to foreclose a mortgage on and for possession of premises at 87 Union Avenue, Belford, New Jersey.  The matter is before the court on cross-motions for summary judgment by the substituted plaintiff American Title Insurance Company (American) for foreclosure and possession, and by defendants Vito and Julia Capabianco (Capabianco), to dismiss the foreclosure action and to have their rights "as affect the subject premises" declared.

The mortgage in question was a purchase money mortgage dated June 14, 1961, in the amount of $10,600, from George W. Fink and Jeanette V. Fink, husband and wife, to J. I.

Kislak Mortgage Corporation (Kislak). That corporation assigned the mortgage to the First Federal Savings & Loan Association of Clearwater, Florida (First Federal) on July 24, 1961. On September 25, 1961 Vito Capabianco obtained a judgment against a George Fink for $1,100 and costs of $76.03 in the Superior Court of New Jersey, Law Division.

By deed dated July 23, 1963 George W. Fink and Jeanette V. Fink conveyed the premises to The Whale Agency, subject to the mortgage. A search made in connection with that conveyance revealed four federal liens against a George E. Fink, Church Street, Belford, New Jersey, and the judgment in the Superior Court of New Jersey in favor of Vito *Capabian(c)o* against a George Fink. In connection with the conveyance from the Finks to The Whale Agency, an affidavit was obtained from George W. Fink dated July 23, 1963, in which he stated his attention had been drawn to the federal liens and the Superior Court judgment and that "the aforesaid judgments are not against me but against others of similar name." The Whale Agency conveyed the premises to Vito Doria and Rose Doria, his wife, by deed dated August 13, 1963, subject to the mortgage.

John L. Bork and Josephine M. Bork entered into a contract to purchase the premises from the Dorias, which contract was dated November 18, 1965. The purchase price was $12,500.

The complaint in this action was filed January 14, 1966 by First Federal to foreclose its mortgage. It named as a defendant Vito *Capabian,* setting up in paragraph 11 his judgment against George Fink referred to above. A notice of *lis pendens* was filed January 21, 1966, which did not name all of the defendants but listed the defendants as "George W. Fink, et al." An answer was filed on February 4, 1966 by Vito Capabianco, admitting the allegations of the complaint and joining in the plaintiff's demand for judgment, asking that the amount due to him on his judgment be fixed in the foreclosure judgment and that he be paid with interest and costs.

By letter dated December 6, 1965 Kislak advised the closing attorney in the Bork transaction that an FHA mortgage loan of $12,500 had been approved to John Bork on the premises involved. Kislak requested American Title Insurance Company, Guaranteed Title Division, to make a full search of title to the premises. This search revealed, among other things, the Capabianco judgment and the notice of *lis pendens.* The title to the premises was closed March 2, 1966, the judgment in favor of Capabianco having been passed on the basis of the above affidavit of George W. Fink. Apparently no effort was made by anyone connected with the Bork transaction to determine who were the additional defendants in the foreclosure action that was revealed by the notice of *lis pendens.* At the closing on March 2, 1966 Kislak advanced $12,500, to be secured by a new mortgage which was to be a first lien on the premises. On March 7, 1966 Kislak received, as servicing agent for First Federal, $10,-473.45 to pay off the mortgage sought to be foreclosed in this action. On March 9, 1966 Kislak's check in the amount of $10,031.07 was transmitted by it to First Federal in satisfaction of the mortgage. This check was deposited by First Federal and paid by the bank upon which it was drawn. First Federal then endorsed upon the original mortgage the following:

"THE WITHIN MORTGAGE HAVING BEEN FULLY PAID AND SATISFIED, THE MONMOUTH COUNTY CLERK IS HEREBY AUTHORIZED TO CANCEL SAME OF RECORD. FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF CLEARWATER, FLORIDA
ATTEST:  s/ Mary E. Plumb

MARY E. PLUMB, SECRETARY
s/ C. Raymond Lee

C. RAYMOND LEE, PRESIDENT"

American issued a fee policy to John L. Bork and Josephine M. Bork, his wife, and a mortgagee title policy to "J. I. Kislak Mortgage Company and/or Federal Housing

Administration as interest may appear." Both policies were dated March 2, 1966. The judgment was not set up as an exception.

When the closing attorney attempted to obtain a dismissal of this action, he learned that the judgment in favor of Vito Capabianco against George Fink had been set up in the foreclosure complaint as a junior lien on the mortgaged premises and that an answer had been filed on behalf of Capabianco. Capabianco would not consent to a dismissal of the action unless the amount of the judgment with interest was paid. It is admitted that the judgment was against George W. Fink, a prior owner of the premises as tenant by the entirety with his wife.

Under date of June 6, 1966 American obtained an assignment of the mortgage from First Federal for no consideration. It then struck out the endorsement on the mortgage and placed the following endorsement underneath the First Federal endorsement:

"THIS CANCELLATION AFFIXED INADVERTENTLY.
AMERICAN TITLE INSURANCE COMPANY
BY: s/ Reginald Dugdale
Reginald Dugdale—Vice President"

Vito Capabianco took steps to proceed to an execution sale under his judgment. On October 24, 1966 an order to show cause was signed restraining the sale. By order in this action, dated November 9, 1966, the restraint was dissolved. Thereafter the execution sale was held on January 16, 1967, at which the interest of George W. Fink in the premises was sold to Vito Capabianco. On or about February 3, 1967 the interest of George Fink in the premises was conveyed to Vito Capabianco by the sheriff.

At the closing on March 2, 1966 John L. Bork and Josephine M. Bork, his wife, executed a purchase money mortgage in the amount of $12,500 to Kislak. The mortgage was assigned on April 1, 1966 to Federal National Mortgage Association.

On December 21, 1966 there was filed in the office of the Clerk of the Superior Court a document entitled "Substitution of Parties and of Attorney." This document recited that the interest of First Federal had been assigned to American Title Insurance Company and that First Federal, through its attorney, consented to the substitution of American as plaintiff in the action. By an order dated February 23, 1967, consented to by the attorney for Capabianco and advised by the standing master, American was permitted to file an amendment to the complaint and a supplemental complaint. The supplemental complaint was filed on February 24, 1967, joining as defendants Vito Capabianco's wife Julia, the present owners of the premises John L. Bork and his wife Josephine, and the United States of America, the holder of the $12,500 mortgage. On April 25, 1967 the complaint was voluntarily dismissed by American as to the United States of America. A general appearance was entered by John L. Bork and Josephine M. Bork, *pro se*, on October 31, 1967. Their general appearance was obviously drawn by the attorney for American; however, American is not seeking any relief on behalf of or through the Borks. A default was entered November 1, 1967 against George W. Fink and Jeanette B. Fink.

Assuming that the First Federal mortgage is still in existence, the sum of $10,880.96 would be due as of October 20, 1967.

The position taken by American is that since under its mortgagee policy it has a right at its own cost to institute or prosecute any action or proceeding which in its opinion may be necessary or desirable to establish the lien of the mortgage as insured, it may continue the pending foreclosure action, being subrogated to the right of First Federal. It argues that equity should relieve the present mortgagee, United States of America, from the mistake that was made in advancing money to pay off the First Federal mortgage without in some manner obtaining a satisfaction of, or at least a priority to, the Capabianco judgment, under *Institute*

*B. & L. Ass'n v. Edwards,* 81 *N. J. Eq.* 359 (*Ch.* 1913);
*Jackson Trust Co. v. Gilkinson,* 105 *N. J. Eq.* 116 (*Ch.*
1929); *Home Owners' Loan Corp. v. Collins,* 120 *N. J. Eq.*
266 (*Ch.* 1936); *Cliffside Park, etc., Co. v. Progressive, etc.,
Inc.,* 122 *N. J. Eq.* 109 (*Ch.* 1937); *Hudson County Cale-
donian B. & L. Ass'n v. Cole,* 128 *N. J. Eq.* 172 (*E. & A.*
1940); *Camden County Welfare Board v. Federal Deposit
Ins. Corp.,* 1 *N. J. Super.* 532 (*Ch. Div.* 1948). However,
the relief that is being sought in this action is not the same
relief that was granted in those actions. Here the substituted
plaintiff seeks to foreclose the earlier mortgage which, in fact
has been paid in full, there being no default presently exist-
ing in the current mortgage. In *Atlantic Seaboard Co. v.
Borough of Seaside Park,* 36 *N. J. Super.* 142 (*App. Div.*
1955), certification denied, 19 *N. J.* 619 (1955), the Appel-
late Division held:

"A bond and mortgage, once satisfied, cannot be revived without the
authorization of the obligor upon the bond and the owner of the
estate in the land." (at *p.* 154)

In *Di Giovacchini v. Teich,* 133 *N. J. Eq.* 107 (*Ch.* 1943),
Vice-Chancellor Jayne stated:

"A revival or renewal of a mortgage once paid, is tantamount to
the execution of a new mortgage and the creation of a new encum-
brance. * * * The contractual power to revive an obligation which
has been discharged by payment is circumscribed by certain limita-
tions. It cannot be exercised to the prejudice of others whose rights
were acquired prior to such revival." (at *p.* 113)

See also *Whitney v. Franklin,* 28 *N. J. Eq.* 126 (*Ch.* 1877).
▋ There are several reasons why American is not en-
titled to summary judgment for foreclosure. At the time of
the assignment of the First Federal mortgage to American
that mortgage had been paid. There is no indication that
George W. Fink and Jeanette V. Fink have authorized the
revival of the mortgage, nor is there any indication that the
present owners of the estate, the Borks, have authorized the

revival of the mortgage. The holder of the subsequent mortgage, United States of America, is not before the court seeking any relief and, in fact, although it was joined as a party defendant, it has been dismissed from the action. Vito Capabianco acquired an interest in the premises as the result of his judgment. The only purpose to be served by foreclosing the First Federal mortgage would be to cut off his interest. In view of the subsequent conveyances of the title and of the subsequent mortgage, there could not be a fair sale of the premises under any judgment foreclosing the First Federal mortgage. For that reason the rights of Vito Capabianco would be unfairly dealt with should the court permit a judgment of foreclosure. The court need not consider the effect of the execution sale.

It would be an entirely different situation if there had been a default under the $12,500 mortgage and the mortgagee was seeking foreclosure of its mortgage and to be subrogated to the position of First Federal at the time its mortgage was paid. *Elmora and West End, etc. Ass'n v. Dancy,* 108 *N. J. Eq.* 542 (*Ch.* 1931). Title insurance is a contract of indemnity. 1 *Couch on Insurance* 2d, § 1:101, *p.* 98 (1959). No claim has been made upon American under either of the title insurance policies.

It is doubtful that American has any right of subrogation because it has not been called upon, and, in fact, may never be called upon, to pay any loss. *George M. Brewster & Son v. Catalytic Const. Co.,* 17 *N. J.* 20 (1954) ; *Standard Accident Ins. Co. v. Pellecchia,* 15 *N. J.* 162 (1954) ; *Ganger v. Moffett,* 8 *N. J.* 73 (1951). If Mrs. Fink outlives Mr. Fink, the $12,500 mortgage will be a first lien upon the premises. It would only be if Mr. Fink outlives Mrs. Fink that American might be called upon to make payment under its policy. *King v. Greene,* 30 *N. J.* 395 (1959).

Vito Capabianco and Julia Capabianco, his wife, moved for summary judgment dismissing the foreclosure action and "declaring their rights as affect the subject premises." In view of what has been said above, summary judgment will

be granted dismissing the foreclosure action. No counterclaim was filed by the Capabiancos requesting a declaratory judgment. Even if a counterclaim had been filed, it would be premature for this court to grant the relief requested. Whatever their rights may be today, they will be changed in the future by a factual event, *i. e.*, the death of Mr. or Mrs. Fink. See *King v. Greene, supra.*

Judgment consented to as to form will be submitted within ten days in accordance with *R. R.* 4:55-1, denying the motion of the substituted plaintiff for summary judgment and granting the motion of the defendants Vito Capabianco and Julia Capabianco dismissing this action with costs.