106 N.J. Super. 429 (1969)
256 A.2d 76
VITO CAPABIANCO AND JULIA CAPABIANCO, HIS WIFE, PLAINTIFFS,
v.
JOHN L. BORK, JOSEPHINE M. BORK, HIS WIFE, AND FEDERAL NATIONAL MORTGAGE ASSOCIATION, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided May 26, 1969.
*430 Mr. Donald I. Bierman for plaintiffs (Messrs. Bierman and Bierman, attorneys, not appearing).
Mr. Frank W. Hoak for defendants (Mr. Donald B. Jones, attorney).
LANE, J.S.C.
This is an action for partition with a counterclaim for subrogation to the rights of a prior mortgagee and for strict foreclosure. The facts are not in dispute. The matter is now before the Court on final hearing. The plaintiffs did not press the complaint nor appear at the final hearing, having no objection to whatever disposition to be made by the Court on the counterclaim.
On June 14, 1961 George W. Fink and Jeannette V. Fink, his wife, acquired title to the premises in question, executing a mortgage to J.I. Kislak Mortgage Corporation (Kislak) to secure payment of a loan of $10,600. This mortgage was subsequently assigned to First Federal Savings & Loan Association of Clearwater, Florida (First Federal).
On September 25, 1961 Vito Capabianco obtained a judgment against a George Fink for $1,100 and $76.03 costs.
The Finks conveyed the premises on July 23, 1963 to the Whale Agency subject to the 1961 mortgage. At that time George W. Fink signed an affidavit that the judgment of Capabianco on record was not against him but against another of similar name. The Whale Agency conveyed the property to Vito Doria and Rose Doria, his wife, subject to the first mortgage by deed dated August 13, 1963. By contract dated November 18, 1965 the Dorias contracted to sell the premises to the defendants John L. Bork and Josephine Bork for the sum of $12,500. In connection with *431 the purchase Kislak on December 6, 1965 issued to the Borks a commitment for a $12,500 FHA mortgage.
On January 14, 1966 the prior mortgagee, First Federal, commenced a suit to foreclose the 1961 mortgage, joining Vito Capabian as a defendant. A lis pendens was filed January 21, 1966.
The Borks' title and the FHA purchase money mortgage were closed March 2, 1966, the deed and mortgage being recorded March 4, 1966. At the closing reliance was placed on the Fink affidavit referred to above. On April 1, 1966 this mortgage was assigned to the defendant Federal National Mortgage Association (FNMA). Out of the proceeds of the present existing $12,500 mortgage, $10,473.45 was used to pay off the 1961 mortgage.
After the Borks' closing, the closing attorney sought to obtain a dismissal of the foreclosure action. For the first time he became aware of the fact that the Capabianco judgment had been set up by the foreclosing attorney as a junior lien. The judgment creditor had filed an answer and would not consent to a dismissal of the action unless he was paid the amount of his judgment. It subsequently developed that the affidavit of George W. Fink which was relied upon at the Whale Agency, Doria and Bork closings was not true as to the Capabianco judgment.
On June 6, 1966 First Federal assigned the 1961 mortgage to the American Title Insurance Company. In the foreclosure action the assignee was substituted as plaintiff. On January 11, 1968 this Court entered an order in the foreclosure action denying the substituted plaintiff's motion for summary judgment and granting a motion of the defendant Capabianco dismissing the complaint.
The Capabiancos purchased George W. Fink's interest at an execution sale under the judgment and obtained a sheriff's deed dated February 3, 1967 of Fink's interest in the premises.
The present action was commenced in April 1968 by Vito and Julia Capabianco for partition against the Borks, the *432 present owners of the property, and FNMA, the holder of the $12,500 mortgage. The defendants counterclaimed seeking subrogation to the rights of First Federal under the 1961 mortgage (admittedly prior to any interest of the Capabiancos) that was paid off out of the proceeds of the existing $12,500 mortgage, and also seeking strict foreclosure to cut off any interest that the Capabiancos may have.
In the prior suit, First Federal Savings & Loan Ass'n v. Fink et al., 99 N.J. Super. 76 (Ch. Div. 1968), this Court granted the Capabiancos' motion for summary judgment dismissing the foreclosure action brought by the assignee of First Federal. In that action the title company, the assignee, had argued that equity should relieve the present mortgagee from the mistake that was made in advancing money to pay off the First Federal mortgage without in some manner obtaining a satisfaction of, or at least a priority to, the Capabianco judgment. The Court held that the cases granting subrogation were inapplicable, stating at 99 N.J. Super. 82:
"Here the substituted plaintiff seeks to foreclose the earlier mortgage which, in fact has been paid in full, there being no default presently existing in the current mortgage."
The rights of the present mortgagee, FNMA, were not before the Court at that time. The issue of subrogation is now squarely raised by FNMA and the present owners.
In 4 Pomeroy's Equity Jurisprudence (5th ed. 1941), § 1211, p. 635, the author states:
"Under some circumstances, the payment of the amount due on a mortgage, when made by certain classes of persons, is held in equity to operate as an assignment of the mortgage. By means of the payment, the mortgage is not satisfied and the lien of it destroyed, but equity regards the person making the payment as thereby becoming the owner of the mortgage, at least for some definite purposes, and the mortgage as being kept alive, and the lien thereof as preserved, for his benefit and security. This equitable result follows, although no actual assignment, written or verbal, accompanied the payment, and the securities themselves were not delivered over to the person making payment, and even though a receipt was given *433 speaking of the mortgage debt as being fully paid, and sometimes even though the mortgage itself was actually discharged and satisfied of record. This equitable doctrine, which is a particular application of the broad principle of subrogation, is enforced whenever the person making the payment stands in such relations to the premises or to the other parties that his interests, recognized either by law or by equity, can only be fully protected and maintained by regarding the transaction as an assignment to him, and the lien of the mortgage as being kept alive, either wholly or in part, for his security and benefit."
In 4 Id. § 1212 it is stated, at p. 642:
"Subrogation of lender who takes new security.  It is frequently held, there being no intervening equities, that one who advances money to discharge a prior lien on real or personal property, and who takes a new mortgage as security, is entitled to subrogation to the prior lien as against the holder of an intervening lien of which the lender was ignorant. However, on various grounds such as negligence in examining the records, the voluntary nature of the loan, and the like, subrogation has been denied in some cases and in some jurisdictions."
The defendants rely upon Jackson Trust Co. v. Gilkinson, 105 N.J. Eq. 116 (Ch. 1929) and other cases of like holding. In that case the mortgagee sought foreclosure of a mortgage executed at a time when the property was already encumbered by a mortgage and several municipal tax liens. Out of the proceeds of the plaintiff's mortgage the existing mortgage and the tax liens were paid. Unknown to the closing attorney the mortgagors hal contracted prior to the execution of the plaintiff's mortgage with a builder to have a garage erected on the property. The builder claimed priority over the plaintiff's mortgage by reason of his mechanic's lien claim filed after the execution of the mortgage. At the time of the closing the mortgagors delivered an affidavit which stated that there were no liens or encumbrances against the mortgaged premises other than the existing mortgage and tax liens. The affidavit also recited that the buildings then erected on the mortgaged premises had been erected thereon for a period of more than four months and that no alterations, additions or repairs had been made to the premises within such period. The plaintiff's attorney in his examination of the mortgagors' title did not cause an *434 inspection to be made of the premises and failed to ascertain that a garage was in the course of erection. Vice-Chancellor Fallon stated at pp. 119-120:
"The question submitted for my determination herein is whether the complainant should be subrogated to the mortgage lien of the Greenville Heights Building and Loan Association, and the tax lien of the city of Jersey City. The complainant, in my judgment, is entitled to be subrogated to the amount paid by it in satisfaction of the first mortgage lien held by Greenville Heights Building and Loan Association ($7,977.04) and the lien of the city of Jersey City for municipal taxes for the years 1925 and 1926 ($522.96), aggregating $8,500, with interest thereon from the date of complainant's mortgage. The mortgage lien of The Claremont Bank of Jersey City is subordinate only to complainant's mortgage. The proofs show that complainant's mortgage was intended to be a first lien on the mortgaged premises, and therefore the equitable principle of conventional subrogation is applicable, but even though such principle be regarded as inapplicable, I am of the opinion that the complainant is entitled to the benefit of the equitable principle of subrogation. * * *

* * * * * * * *
The principle of subrogation is well recognized in this state. It is urged in behalf of Bahr that complainant was merely a volunteer; it is likewise urged that this court should refuse to award to complainant the right of subrogation because of its failure to ascertain that at the time of the execution and delivery of complainant's mortgage a garage was being erected upon the mortgaged premises for which said premises might be subject to a mechanics' lien. While it has been held that as a rule equity will refuse to rectify a mistake which occurred through inexcusable negligence of a party who asks to be relieved from the effect of the mistake, and the act done by mistake is one calculated to induce others to take a course of action which will put them to loss if such mistake is corrected, and it ought to clearly appear that the party asking for relief has been led into the mistake notwithstanding the exercise of due diligence, nevertheless, it has also been held that where, as in the case sub judice, no one is injured by th mistake, and no one has changed his position by reason of the act executed through the influence of the alleged mistake, there is no good reason why the mistake should not be corrected although the highest degree of vigilance has not been exercised. It has been repeatedly held that negligence arising out of the failure of a party to procur proper searches should be considered with reference to the effect on the rights of others."
See also Hudson County Caledonian Building & Loan Ass'n v. Cole, 128 N.J. Eq. 172 (E. & A. 1940); Camden County Welfare Bd. v. Federal Deposit Ins. Corp., 1 N.J. Super. 532 (Ch. Div. 1948); Cliffside Park, etc., Co. v. *435 Progressive, etc., Inc., 122 N.J. Eq. 109 (Ch. 1937); Home Owners' Loan Corp. v. Collins, 120 N.J. Eq. 266 (Ch. 1936); Institute Building & Loan Ass'n v. Edwards, 81 N.J. Eq. 359 (Ch. 1913).
Here Capabianco will not suffer any prejudice if subrogation is allowed to the mortgagee. He was a defendant in the foreclosure action which would probably have proceeded to judgment and sale, when the First Federal mortgage was paid off with funds advanced under the mortgage now held by FNMA. There will be a judgment providing for subrogation of FNMA. Such judgment is, however, of no practical effect until there is a default and a suit to foreclose the $12,500 mortgage.
The Borks also seek subrogation to the extent of their principal payments made to FNMA.
In 4 Pomeroy's Equity Jurisprudence (5th ed. 1941), § 1213, at pages 644-645 the author states:
"On the other hand, if payment of the mortgage debt is made to the mortgagee or other holder of the mortgage, by a party who is himself personally and primarily liable for the debt, who is in any manner and by any means the actual primary debtor, whose duty it is to pay the debt absolutely, and before all others, such payment operates ipso facto as an end of the mortgage, and the lieu is completely destroyed. The party so paying is not subrogated to the rights of the mortgagee; there is no equitable assignment to him of the mortgage security; even if he should receive a formal assignment, the mortgage could not be thus kept alive, but would be wholly merged and ended. In this description are included the mortgagor himself, so long as he remains the principal debtor, and has not changed his relations by a conveyance, and also the grantee from the mortgagor who has assumed payment of the mortgage debt and thus rendered himself the principal and primary debtor therefor (see § 797). When a grantee has thus become the principal debtor, the mortgagor, as his surety, upon payment, is an equitable assignee of the mortgage, and is subrogated to the mortgagee so far as is necessary to enforce his right of exoneration by the grantee; but it by no means follows that he is an equitable assignee of the mortgage, and entitled to enforce its lien against all subsequent encumbrancers and other parties interested."
The Borks are, of course, the principal debtors insofar as FNMA is concerned, but they did not become the actual *436 primary debtors insofar as the prior mortgage was concerned. See 4 Id., § 1212, pp. 637-639, where the author states that the grantee of the mortgagor who takes the property subject to the mortgage and who pays off the mortgage may be subrogated to the rights of the mortgagee. Such rule is based on the fact that the grantee is not the principal debtor.
Here, rather than assuming the 1961 mortgage the Borks arranged to have it paid off from the proceeds of a mortgage that they are obligated to pay. If the Borks had advanced their own money to pay off the 1961 mortgage, they would have been entitled to subrogation vis-a-vis Capabianco. Elmora and West End, etc., Ass'n v. Dancy, 108 N.J. Eq. 542, 545 (Ch. 1931). When the Borks have satisfied the existing mortgage, they will be entitled to be subrogated to the position of FNMA just as it is entitled to subrogation to the rights of the prior mortgagee.
In support of the prayer for strict foreclosure the defendants rely on Sears, Roebuck & Co. v. Camp, 124 N.J. Eq. 403 (E. & A. 1938), in which case the Court stated at p. 409:
"Yet strict foreclosure is still an appropriate remedy where, in the special circumstances, it will subserve equity and justice. This is particularly the case where, through the customary foreclosure by judicial sale or a conveyance by the mortgagor, the legal and equitable estates has become united in the mortgagee, who is also in possession under his legal title, and some outstanding junior interest has not, by reason of pure inadvertence, not aggravated by bad faith, been barred by the decree. Such is the established practice in this state."
Here, however, there is no mortgagee in possession nor has there been a foreclosure or a conveyance to the mortgagee by a mortgagor. Neither the defendants Bork nor the defendant FNMA have by themselves both the legal and equitable estates. FNMA is a mortgagee who is subrogated to a lien superior to the interest of the Capabiancos. There was not a foreclosure of the prior mortgage. In fact, this Court denied foreclosure to the assignee of that mortgage.
*437 There having been no foreclosure judgment and there having been no other occurrences such as referred to in Sears, Roebuck & Co., strict foreclosure is not appropriate. 4 Pomeroy's Equity Jurisprudence (5th ed. 1941), § 1227, pp. 680-681; 37 Am. Jur., Mortgages, § 530; cf., Steffel v. Grissler, 129 N.J. Eq. 425 (E. & A. 1941).
It is urged that had the closing attorney at the time of the Borks' purchase known of the Capabianco judgment, there would have been no closing. Such assertion is based upon speculation and does not necessarily follow. The sales price might have been renegotiated. If this particular sale had not been consummated, another sale at a higher price might have been made. Nor does it follow that had the foreclosure of the prior mortgage gone to judgment and sale there would not have been a surplus to remain on deposit with the clerk of the court to await the termination of the interest of Mrs. Fink. See Fort Lee Savings & Loan Ass'n v. LiButti, 106 N.J. Super. 211 (App. Div. 1969). It is observed that the real party in interest here is the American Title Insurance Company which had been engaged by Kislak to make the search at the time the Borks purchased. First Federal Savings & Loan Ass'n v. Fink et al., supra, 99 N.J. Super., at p. 79. No special circumstances appear here to indicate that equity and justice would be subserved by the allowance of strict foreclosure. Capabianco has not been delinquent in pressing his rights nor has he acted in any inequitable manner.
The complaint will be dismissed. There will be a judgment on the counterclaim that FNMA is entitled to subrogation upon any default in its mortgage to the amount of $10,473.45 with interest at 5-1/4% (rate of prior mortgage) from March 2, 1966 (date the prior mortgage was paid). As the Borks make payments on the existing mortgage their interest will succeed to the interest of FNMA as being prior to the Capabiancos' interest. Strict foreclosure is denied.