J-A25020-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JURELL SMALLS, | : | |
| | : | |
| Appellee | : | No. 1723 EDA 2014 |

Appeal from the Order May 13, 2014,
Court of Common Pleas, Montgomery County,
Criminal Division at No(s): CP-46-CR-0008154-2012
and CP-46-CR-0008377-2012

BEFORE:  DONOHUE, MUNDY and FITZGERALD*, JJ.

MEMORANDUM BY DONOHUE, J.:　　　　　　　**FILED DECEMBER 29, 2015**

The Commonwealth of Pennsylvania appeals from the trial court's order dated May 13, 2014, granting the Omnibus Motion to Suppress filed by Appellee, Jurell Smalls ("Smalls").  The trial court ruled that the information in the affidavit of probable cause relating to events from July 2009 through April 2012 was stale and thus could not support a finding of probable cause.  The trial court further ruled that because Smalls played no role in the events described in the affidavit of probable cause in the two months immediately preceding the issuance of the warrant, this information likewise failed to provide the requisite probable cause.  For the reasons set forth herein, we conclude that the warrant at issue here was constitutionally overbroad and thus affirm the trial court's order.

---

*Former Justice specially assigned to the Superior Court.

In its written opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, the trial court provided the following summary of the relevant factual and procedural history of this case:

> Beginning in March of 2009, the Lansdale Police Department, in conjunction with the Montgomery County District Attorney's Municipal Drug Task Force, conducted an investigation into [Smalls], leading to a September 21, 2012 application for a search warrant. The investigation centered on [Smalls], his twin, younger brothers, and their residence at 116 East Third Street, Lansdale Borough, Montgomery County, Pennsylvania. Along with [Smalls], Lisa Washington owns the home.
>
> The affidavit of probable cause supporting the application for the search warrant establishes evidence in two phases. First, between March 6, 2009 and March 9, 2012, various "concerned citizens" contacted the police with numerous reports of suspected drug activity in the area of 116 East Third Street. Additionally, upon the development of a confidential informant in March of 2012, the police department began a concerted investigation into [Smalls] and the alleged activities around his residence. Then, in August of 2012, after a roughly five month hiatus, surveillance resumed with additional reports from a concerned citizen. The second phase of the investigation culminated in the application for and execution of the search warrant.
>
> On March 6, 2009, a neighbor of [Smalls] anonymously reported two suspected drug deals within fifteen minutes on the corner of East Third Street and North Chestnut Street, about a half-block from [Smalls'] residence. The report claimed that a black male on foot approached two separate vehicles and passed unidentified objects to the occupants in each vehicle. The black male then entered the residence at 116 East Third Street. Another citizen, "Concerned Citizen Number Three," contacted the

police on three occasions, July 4, 2009, November 17, 2010, and November 20, 2010, to report suspected drug activities. These statements identified [Smalls] and reported his involvement in hand-to-hand transactions with unidentified visitors at and around 116 East Third Street. In response to the November 20, 2010 report, police officers conducted covert surveillance of the residence and witnessed a person known to be a drug dealer meet with [Smalls] in the alley behind 116 East Third Street.

On February 2, March 7, and March 9, 2012, "Concerned Citizen Number Two" reported suspected drug activity at 116 East Third Street. This person informed police about drug transactions with brief visitors inside [Smalls'] residence. The report also indicated drug activities involving individuals on foot in front of and behind the residence, along the alley, and in the apartment building on the corner of East Third Street and North Chestnut Street. Concerned Citizen Number Two further witnessed the exchange of cash for an unknown substance in a small baggie.

In March of 2012, the police developed a confidential informant with ostensible knowledge of [Smalls]. This source alleged to police that [Smalls] was selling marijuana and Oxycodone out of 116 East Third Street. The informant also alleged that [Smalls] supplied "street level" drug dealers with these substances. In April 2012, the police conducted a controlled purchase of Oxycodone in conjunction with the confidential informant. In the course of the exchange, the police provided a set amount of currency to purchase a prearranged quantity of Oxycodone. Then, the informant met with an "unwitting subject" who entered 116 East Third Street and exited four minutes later. Upon return to the police, the informant stated that the "unwitting subject" passed the expected amount of Oxycodone to the informant after exiting the residence. The informant turned over the Oxycodone to the police. Subsequently, on April 14,

2012, the police initiated surveillance of 116 East Third Street. On that day, surveillance revealed numerous young adults interacting on the property as well as in and around vehicles parked along the street.

After almost five months had passed, on August 28, 2012, police reinitiated surveillance of 116 East Third Street. That day, the police witnessed [Smalls'] twin, younger brothers with two other individuals apparently smoking marijuana on the front porch. Later that evening, an unidentified visitor passed money to one of [Smalls'] younger brothers in front of the house.

Additionally, in August 2012, Concerned Citizen Number Four met with police to report the existence of marijuana plants in the back yard of 116 East Third Street, tended by twin teenage males. This person reported witnessing one of the twins plant something in that location the month prior. Consequently, police again conducted surveillance on the residence on August 31, September 1, and September 2, and they witnessed [Smalls'] younger brothers tending apparent marijuana plants along with an unidentified black male. The four small plants were located along the border between 116 and 118 East Third Street, a few feet into the neighboring property. Finally, on September 19, 2012, a police officer noticed that one of the four suspected marijuana plants remained at the location. There is no evidence of what happened to the other three plants.

On September 21, 2012, the Lansdale Police department applied for a search warrant for [Smalls'] residence at 116 East Third Street, and Magisterial District Justice Borek approved it on the same day. The Lansdale Police Department executed the warrant on September 22, 2012, seized evidence, and arrested [Smalls] as a result of that evidence. On July 26, 2013, [Smalls] filed an

- 4 -

Omnibus Pretrial Motion including the motion to suppress the fruits of the search warrant.

The May 13, 2014 order presented on appeal granted [Smalls'] Omnibus Motion to Suppress the evidence obtained through the execution of the September 21, 2012 search and seizure warrant. On June 11, 2014, [the Commonwealth] filed a Notice of Appeal to the Superior Court and requested review of the May 13, 2014 order. Accordingly, on June 18, 2014, [the trial court] ordered [the Commonwealth] to file a Concise Statement of Matters Complained of on Appeal within 21 days. [The Commonwealth] filed the Concise Statement with [the trial court] on July 9, 2014, in compliance with the order.

Trial Court Opinion, 8/1/2014, at 1-4 (footnotes omitted).

On appeal, the Commonwealth presents the following issue for our consideration and determination:

Whether the lower court erred by holding that there was not a substantial basis for the magistrate's finding of probable cause to issue a search warrant, where it failed to consider the totality of the circumstances in making such a determination, but instead, viewed each individual source of probable cause in a vacuum and ignored its corroborative value, discounted information that [Appellee's] brothers were drug-dealing from the house, and failed to consider the suspected criminal activity in August and September 2012 when assessing staleness?

Commonwealth's Brief at 8.

Our standard of review in this case is as follows:

When the Commonwealth appeals from a suppression order, this Court may consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read

- 5 -

> in the context of the record as a whole, remains uncontradicted. In our review, we are not bound by the suppression court's conclusions of law, and we must determine if the suppression court properly applied the law to the facts. We defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony.

*Commonwealth v. Hudson*, 92 A.3d 1235, 1241 (Pa. Super. 2014) (internal quotation marks and citations omitted), *appeal denied*, 106 A.3d 724 (Pa. 2014).

In its written opinion, the trial court indicated that it granted Smalls' motion to suppress for two reasons. First, the trial court ruled that all of the information obtained during the first stage of the investigation (from 2009 through April 2012) was stale and thus could not be used to support a finding of probable cause. Trial Court Opinion, 8/1/2014, at 6-10. Second, the trial court concluded that the information obtained in the second stage of the investigation (August-September 2012) failed to "identify any involvement by the defendant, [Smalls], in any activities involving the use, sale, or cultivation of drugs." *Id.* at 11. The Commonwealth challenges both of these determinations by the trial court, and thus we will review both herein.

The Fourth Amendment of the United States Constitution and Article I, § 8 of the Pennsylvania Constitution guarantee the right of the citizenry to

- 6 -

be free from unreasonable searches and seizures. To obtain a valid search warrant, the affidavit of probable cause must demonstrate that probable cause exists to believe that execution of the warrant will lead to the recovery of contraband or evidence of a crime. *Commonwealth v. Caple*, 121 A.3d 511, 520 (Pa. Super. 2015). We review the issuing authority's decision in light of the totality of the circumstances:

> Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in [*Illinois v. Gates*, 462 U.S. 213 (1983)], the task of an issuing authority is simply to make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.... It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a commonsense, non-technical manner.

*Commonwealth v. Jones*, 988 A.2d 649, 655 (Pa.), *cert. denied*, 562 U.S. 832 (2010).

With regard to the trial court's determination that the information obtained in the first stage of the investigation was stale, the affidavit of probable cause provides the following information relevant to this inquiry:

- Beginning in July 2009, a concerned citizen made reports to Lansdale police that he/she had observed

- 7 -

Smalls engage in a variety of suspicious behavior, including what appeared to be hand-to-hand drug transactions with various individuals on the front porch and in the rear alley of his family's residence. Beginning in February 2011, a second concerned citizen also reported that Smalls was engaging in a substantial number of drug transactions in and around the family residence. Surveillance by the Lansdale police on April 14, 2012 resulted in observations consistent with those received from the two concerned citizens.

- In March 2012, a confidential source provided the Lansdale police with additional information regarding Smalls' apparent drug sales. In the first week of April 2012, this confidential source assisted the Lansdale police in conducting a controlled purchase of a prescription narcotic (Oxycodone) from Smalls.

- In August 2012, a third concerned citizen advised the Lansdale police that he/she had observed Smalls' younger twin brothers, Marcus and Mason Smalls, plant, and then tend and water, marijuana plants hidden in a weed bed in the rear of a neighboring property. On five occasions between August 28, 2012 and September 19, 2012, the Lansdale police surveilled the Smalls' residence and observed Marcus and Mason Smalls tending to and watering four marijuana plants. On one occasion, the brothers (and others) smoked marijuana on the front porch of the Smalls' residence. On September 19, 2012, three of the four plants had been removed.

Affidavit of Probable Cause, 9/21/2012, at 8-20.

Pennsylvania has long held that probable cause must be based upon facts closely related to the time of the issuance of the warrant. In **Commonwealth v. Shaw**, 281 A.2d 897 (Pa. 1971), our Supreme Court held:

> If the issuing officer is presented with evidence of criminal activity at some prior time, this will not support a finding of probable cause as of the date the warrant issues, unless it is also shown that the criminal activity continued up to or about that time.

*Id.* at 899; *Commonwealth v. Jackson*, 461 632, 638-39, 337 A.2d 582, 584-85 (Pa. 1975). More recently, in *Commonwealth v. Gomolekoff*, 910 A.2d 710 (Pa. Super. 2006), this Court set forth the test for determining staleness:

> [A]ge of the information supporting a warrant application is a factor in determining probable cause. If too old, the information is stale, and probable cause may no longer exist. Age alone, however, does not determine staleness. The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant. Rather, we must also examine the nature of the crime and the type of evidence.

*Id.* at 713 (quoting *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993)).

In examining the "the nature of the crime and the type of evidence," this Court has consistently held that information about drug sales becomes stale rapidly because drugs "are of such a nature that they would likely be disposed of quickly," in substantial part because of a compelling desire to sell them as swiftly as possible for profit. *Commonwealth v. Novak*, 335 A.2d 773, 776 (Pa. Super. 1975). In *Novak*, we held that a seven-week old observation of drugs was stale and thus did not provide probable cause for a

search warrant.  *Id.*  Similarly, in *Commonwealth v. Hagen*, 368 A.2d 318 (Pa. Super. 1976), we found that information about drugs "more than a month old" was stale, citing to the rationale in *Novak*.  *Id.* at 322; *but see Commonwealth v. Toner*, 433 A.2d 25, 26 (Pa. Super. 1981) (holding that information about the location of drugs just five days later was not stale); *see generally Commonwealth v. David*, 445 A.2d 757, 758 (Pa. Super. 1982) (citing to *Novak*, 21-day old information about illegal gambling was stale because gambling evidence is "transient in nature").

By comparison, in cases involving types of evidence other than drugs, we have ruled that information is not stale if the items in question, unlike drugs, are of a nature not subject to quick disposition.  *See, e.g.*, *Commonwealth v. Janda*, 14 A.3d 147, 159 (Pa. Super. 2011) ("[S]hoes, unlike drugs, are not an item commonly disposed of soon after they come into the owner's possession."); *Commonwealth v. Hoppert*, 39 A.3d 358, 363 (Pa. Super. 2012) (providing that images of child pornography are difficult to obtain and thus pedophiles rarely dispose of them).

The Commonwealth argues that the information obtained in the first stage of the investigation, although nearly five months old at the time of the issuance of the warrant, was not stale because the totality of the averments in the affidavit of probable cause reflected the "protracted and continuous nature of the illegal narcotics activities" occurring at Smalls' residence.

- 10 -

Commonwealth's Brief at 67.[1] Where there is "continuing activity" up until or near the date of the warrant, otherwise stale information may be used to establish probable cause. **See, e.g.**, **Commonwealth v. Marzel**, 436 A.2d 639, 641 (Pa. Super. 1981).

The affidavit of probable cause, however, does not establish any connection between the information obtained in the two stages of the investigation. All of the information obtained in the first stage (2009 through April 2012), including from the first two concerned citizens, the confidential source, police surveillance, and the controlled purchase, all related to Smalls' drug sales, principally prescription medications. In fact, in summarizing all of the evidence in the affidavit of probable cause, the affiant (Investigator Chad Bruckner) concluded that it established that Smalls sold prescription painkillers, without any mention of marijuana sales:

---

[1] The Commonwealth also contends that the trial court's division of the evidence into two stages was itself error, since this Court has rejected a "divide and conquer" approach in which piecemeal analysis of specific pieces of evidence results in a failure to consider the totality of the evidence. Commonwealth's Brief at 42-57 (citing **Commonwealth v. Carter**, 105 A.3d 765, 772 (Pa. Super. 2014) (en banc)). We disagree with the contention that **Carter**'s general admonition against a "divide and conquer" approach precludes a staleness analysis, which by its very nature requires some division of the evidence. A staleness analysis necessitates that the trial court evaluate the continuing vitality of older evidence, and, when appropriate, determine whether the older evidence and more recent evidence are sufficiently connected to provide the "continuing activity" necessary to avoid rejection of the older evidence as stale.

Conclusion

> I believe, through the investigation detailed herein and my training and experience, that the principal subject of this investigation, Jurell Smalls, **is involved in selling prescription painkillers**. Furthermore, I also believe that he stores **said substances** and the proceeds of those sales in his place of residence, 116 East Third Street, Lansdale, Pennsylvania.

Affidavit of Probable Cause, 9/21/2012, at 20 (emphasis added).

In significant contrast, all of the information obtained in the second stage (August-September 2012) involved Smalls' younger twin brothers growing marijuana plants on a neighboring property and smoking marijuana on the front porch of the Smalls' residence. Until August 2012, when Concerned Citizen Number Four came forward with his/her observations of this activity, the investigation had not uncovered any information from any source regarding the cultivation of marijuana plants in or around the residence, either for personal consumption or sale.

For these reasons, no basis exists upon which to conclude that the information obtained in the second stage of the investigation demonstrates any link to Smalls' prior sales of prescription painkillers (during the first stage). The descriptions of Smalls' activities during the first stage reflects a robust drug-selling operation, plainly noticeable to the two concerned citizens, the confidential source, and the police during their surveillance on April 14, 2012. All described continual and persistent activity at Smalls'

residence, with numerous unidentified individuals engaging with Smalls in hand-to-hand exchanges of small objects for currency, either from their vehicles, on the porch, in the alley, or inside the residence. *Id.* at 8-18. During the second stage of the investigation, however, the third concerned citizen did not report any such activity in or around the Smalls' residence, including no observances of any hand-to-hand transactions (either by Smalls or his brothers). Likewise, even though the police conducted surveillance on five separate occasions from August 28 through September 19, 2012, they reported no such activities at the Smalls' residence during this time period. *Id.* at 18-20.

Accordingly, no information from the second stage supports a finding that Smalls' sales of prescription painkillers during the first stage remained an ongoing criminal operation at the time of the issuance of the warrant on September 21, 2012. The information from the second stage demonstrates only that Smalls' younger twin brothers cultivated up to four marijuana plants and smoked marijuana on the porch, and provides no basis for a finding of probable cause that drugs (either prescription painkillers or marijuana) were being sold by anyone at or around the Smalls' residence in the August-September 2012 time period.[2]

---

[2] In the affidavit of probable cause, Investigator Bruckner concluded that Marcus and Mason Smalls were growing marijuana plants "at least for personal consumption," and that they "could also be cultivating marijuana plants for the purpose of selling the buds for profit." Affidavit of Probable

If the Lansdale police had sought a search warrant for the Smalls' residence in April 2012, it would presumably have been granted and none of the questions presently before this Court would now be at issue. Because no application for a search warrant was filed until September 21, 2012, however, the information obtained from 2009 through April 2012 was stale and could not provide probable cause for the issuance of a search warrant. The affidavit of probable cause provides no link between the two stages of the investigation that would have permitted the magisterial district judge to determine that Smalls' drug activities continued up until or near the date of the issuance of the search warrant.

The trial court also determined that the information obtained in the second stage of the investigation did not, by itself, support a finding of probable cause for the issuance of the search warrant. The trial court's asserted reason for this determination was that no information obtained in the second stage showed any involvement by Smalls in any drug activities during this time, and that instead all of the information related to his younger brothers. Trial Court Opinion, 8/1/2014, at 11. In this regard, the

---

Cause, 9/21/2012, at 21. Other than referring to his "training and experience," however, Investigator Bruckner cited to no evidence in support of his speculation regarding possible marijuana sales. As noted herein, during the August-September 2012 time period, no information supports a finding of drug sales in or around the Smalls' residence, and neither the concerned citizen nor police surveilling the property on multiple dates reported the observation of any hand-to-hand items for cash drug transactions by Smalls or his brothers.

trial court erred, as the critical element in a probable cause inquiry is whether specific things may be present on the property, rather than on the activities of the property owner. *Commonwealth v. Gannon*, 454 A.2d 561, 565 (Pa. Super. 1982). Observation of the brothers' activities during the latter time period likely did provide probable cause to believe that some **marijuana** was in the residence on the date of the issuance of the search warrant, at least in amounts consistent with the brothers' observed personal use.

This Court may affirm the trial court's decision on any basis. *See, e.g.*, *In re Jacobs*, 15 A.3d 509, 509 (Pa. 2011). While probable cause likely existed for a search for marijuana, the warrant issued in this case authorized the seizure of a far longer list of items, including prescription pills and the full panoply of chemicals, objects (scales, baggies, etc), records (receipts, bank statements, ledgers, etc.), weapons, and currency associated with a full-scale drug-manufacturing and drug-selling operation. Application for Search Warrant, 9/21/2012, Exhibit A. As explained hereinabove, no probable cause existed to conclude that any such operation remained actively in place in August-September 2012.

A warrant is constitutionally overbroad "if it is broader than can be justified by the probable cause on which the warrant is based." *Commonwealth v. Santner*, 454 A.2d 24, 26 (Pa. Super. 1982) (quoting LaFave, 2 Search and Seizure 97 (1978)). As our Supreme Court has

instructed, in determining whether a warrant is overbroad, a court must "initially determine for what items probable cause existed," and then the description of the items to be seized must be "measured against those items for which there was probable cause." **Commonwealth v. Grossman**, 555 A.2d 896, 900 (Pa. 1989). "Any unreasonable discrepancy between the items for which there was probable cause and the description in the warrant requires suppression" because it "reveals that the description was not as specific as was reasonably possible." **Id.** The Pennsylvania Constitution expressly requires that a warrant describe the items to be seized "as nearly as may be...." **Id.** ("The clear meaning of the language is that a warrant must describe the items as specifically as is reasonably possible.").

An "unreasonable discrepancy" clearly exists between the items for which probable cause arguably existed (marijuana) and the extensive list of items to be seized set forth in the warrant. As such, the warrant was constitutionally overbroad and thus the trial court did not err in granting Small's suppression motion.

The learned Dissent posits that we should apply the doctrine of severance, pursuant to which those portions of a warrant for which no probable cause exists may be stricken, with the portions supported by probable cause upheld as valid. **Commonwealth v. Begley**, 596 A.2d 811, 824 (Pa. Super. 1991). It appears that this Court has applied the doctrine of severance on three occasions, starting in **Commonwealth v. Casuccio**, 454

A.2d 621 (Pa. Super. 1982); *see also Begley*, 596 A.2d at 824; *Commonwealth v. Anderson*, 40 A.3d 1245, 1248-49 (Pa. Super. 2012). In recognizing the doctrine in *Casuccio*, this Court relied exclusively on a California case, *Aday v. Supreme Court*, 55 Cal.2d 789, 13 Cal.Rptr. 415, 362 P.2d 47 (1961). In neither *Casuccio*, *Begley*, nor *Anderson* did this Court address the constitutionality of the severance doctrine, particularly given the strong right of privacy that inheres in Article 1, Section 8 of the Pennsylvania Constitution. *See Commonwealth v. Johnson*, 86 A.3d 182, 188-89 (Pa. 2014); *Commonwealth v. Edmunds*, 586 A.2d 887, 899, 905-06 (1991) ("[O]ur Constitution has historically been interpreted to incorporate a strong right of privacy, and an equally strong adherence to the requirement of probable cause under Article 1, Section 8."). Our Supreme Court has never addressed the constitutionality of the severance doctrine.

The severance doctrine, even if constitutional, has no application in this case. As recognized in *Casuccio*, the doctrine should not be used in circumstances where probable cause exists as to only a few of a much larger set of items listed for seizure. Quoting from *Aday*, in *Casuccio* this Court emphasized:

> We recognize the danger that warrants might be obtained which are essentially general in character but as to minor items meet the requirements of particularity, and that wholesale seizures might be made under them, in the expectation that the seizure would in any event be upheld as to the

- 17 -

> property specified. Such an abuse of the warrant procedure, of course, could not be tolerated.

*Casuccio*, 454 A.2d at 630 (quoting *Aday*, 55 Cal.2d at 797, 13 Cal.Rptr. at 420, 362 P.2d at 52).

The warrant in the present case was undoubtedly general in character, permitting the police to rummage through 116 East Third Street in a broad search for a lengthy list of items associated with a full-scale drug-manufacturing and drug-selling operation, when in fact probable cause existed, at most, for marijuana in an amount consistent with personal use. Even with respect to marijuana, the warrant lacks particularity, as it permitted the seizure of (among many other things) any items used to grow marijuana **indoors**, including "PVC piping, grow lights, ballasts, circulating[] fans, exhaust fans, light canopies, electrical timers, light rails, circular light movers, hydroponic containers, grow mediums, $CO_2$ injection systems, fertilizers, potting soil, containers for planting, chemicals and fertilizers, pruning and gardening tools, buyers lists, [and] seller lists." Application for Search Warrant, 9/21/2012, Exhibit A ¶ 3. No probable cause existed for any such items, as citizen reports and police surveillance revealed only that Marcus and Mason Smalls had tended to four plants **outdoors**, and the only tools they used were a shovel (stored in the detached garage) and a bottle of water. Affidavit of Probable Cause, 9/21/2012, at 19. No evidence from

any source provided probable cause to support a finding that marijuana was being cultivated inside 116 East Third Street, either for personal use or sale.

Order affirmed.

Fitzgerald, J. joins the Memorandum.

Mundy, J. files a Dissenting Memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/29/2015